WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Arnulfo Trejo, | No. CV-13-00150-TUC-EJM |
| Petitioner, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

Petitioner Fernando Arnulfo Trejo filed a *pro se* petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for sexual conduct with a minor under 15. (Doc. 1). Petitioner raises five grounds for relief based on trial counsel's alleged ineffectiveness and due process violations: (1) trial counsel's failure to obtain employment records for Rose Waltee;[1] (2) trial counsel's failure to discover and present further information about Charles Starcevich's phone call with Rose Waltee; (3) trial counsel's failure to impeach the daycare director's testimony; (4) trial counsel's failure to discover and present evidence of third party culpability; and (5) trial counsel's failure to make a for cause challenge to a biased juror and failure to strike the juror. Petitioner also makes a claim of actual innocence, and further argues that the Court should consider his claims cumulatively when assessing prejudice.

Respondents filed their response contending Ground One is exhausted but only as

---

[1] Formerly known as Rose Letendre

to Petitioner's ineffective assistance of counsel claim and not as to the due process claim. (Doc. 26). Respondents also contend that Grounds Two and Five are unexhausted and procedurally defaulted because Petitioner failed to raise these claims in his Rule 32 petition for post-conviction relief, nor did Petitioner present these claims to the Arizona Court of Appeals ("COA"). Respondents further contend that the ineffective assistance of counsel claims in Grounds Three and Four are unexhausted and procedurally defaulted because although Petitioner raised these issues in his Rule 32 petition, he failed to present them to the COA, and further that the due process claims in Grounds Three and Four are also unexhausted because Petitioner never fairly presented these claims to the state courts.

As to Ground One of the Petition, the Court finds that Petitioner has failed to establish a violation of *Strickland v. Washington*, 466 U.S. 668 (1984), and that the state courts did not err in their resolution of Petitioner's *Strickland* claim. As to Grounds Two, Three, Four, and Five, the Court finds these claims are procedurally defaulted and barred from this Court's review, and that Petitioner does not demonstrate cause and prejudice or a fundamental miscarriage of justice. Accordingly, the petition will be denied.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.  Trial, Sentencing, and Appeal

After two mistrials, a Pima County Superior Court jury found Petitioner guilty of sexual conduct with a minor under the age of 15. (Doc. 26 Ex. E). Petitioner was sentenced to a 13 year term of imprisonment. *Id.*

The Arizona COA summarized the facts of the case as follows:

> On the morning of March 30, 2006, Trejo's girlfriend, Crysta S., left her two-year-old daughter, N., in Trejo's care at their home. When she returned at lunchtime, N. began to cry, saying "owie, owie, owie." Crysta initially could not see anything wrong with N., but when she changed her diaper she noticed there was a spot of blood on the diaper and her vagina was tinged with blood. She took N. to urgent care, where the medical staff who examined her observed a large amount of fresh blood in her vaginal area. They concluded her injuries were likely the result of sexual abuse and referred her to Tucson Medical Center for a sexual assault examination, which revealed "obvious tearing to the [hymenal] region."

(Ex. J a 2).

At his third trial, Petitioner "presented a multi-faceted defense of reasonable doubt as to whether an offense had been committed and whether, if there had, [Petitioner] committed it." (Doc. 1 at 7). Specifically, Petitioner's defense was that N's injuries occurred prior to March 30, 2006 while she was visiting her grandmother and step-grandfather in Yuma, and additionally, that N's uncles had given her a plastic horse shortly before March 30, 2006 and that she might have injured herself on the horse. Supporting Petitioner's defense was an incident that occurred at Happy Faces Daycare in Yuma:

> While changing [N's] diaper, a daycare worker, Idalia Miranda, noticed that [N's] vaginal lips were red, almost to the point of bleeding, the vaginal lips were open, and the genitals were swollen and damaged looking. Miranda testified that she had changed many diapers, including her own daughters, and had not seen anything like it before. At the time, [N] was also crying and saying "He's coming. He's coming."

(Doc. 1–6 at 8–9) (internal citations omitted). Petitioner contends that this incident occurred prior to March 30, 2006, while at trial the state argued that the daycare incident did not occur until April 2006.

Following his conviction, Petitioner sought review in the Arizona COA and argued that the trial court had erred by 1) denying his motion for a mistrial on the grounds that a doctor gave improper opinion testimony; and 2) denying his motion for a new trial on the grounds that the prosecutor misstated the evidence. (Doc. 26 Ex. G). On June 18, 2009, the COA found no reversible error and affirmed Petitioner's conviction and sentence. (Doc. 26 Ex. J).

## B.  Petition for Post-Conviction Relief

On July 17, 2009, Petitioner initiated proceedings in Pima County Superior Court for Rule 32 post-conviction relief ("PCR"). (Doc. 26 Ex. L). The trial court appointed counsel to represent Petitioner, and counsel filed the Rule 32 petition on January 4, 2010. (Doc. 26 Exs. M, O). Petitioner raised issues of ineffective assistance of counsel and

newly discovered evidence. Petitioner first alleged that trial counsel was ineffective for 1) failing to obtain the work records for Rose Waltee, and 2) failing to expose an inconsistency in the daycare director, Marianna Velec's, testimony. (Doc. 26 Ex. O). Petitioner alternatively argued that the work records constituted newly discovered evidence, and that the records would show when the daycare incident occurred and therefore undermine the state's case that N had no injuries prior to being in Trejo's care on March 30, 2006.

Petitioner subsequently moved for permission to amend his PCR petition, contending there was new evidence that Rose Waltee disclosed about Bob Letendre, Rose's former husband and N's step-grandfather, possibly molesting N. (Doc. 26 Ex. P.). The trial court granted Petitioner leave to file a supplemental PCR petition, which Petitioner filed on March 24, 2010. (Doc. 26 Exs. P, Q). Petitioner alleged that there was newly discovered evidence of third party culpability, and alternatively argued that his trial counsel was ineffective for failing to discover and present the evidence. Following an evidentiary hearing, the court denied PCR on March 31, 2011. (Doc. 26 Ex. X).

Petitioner then filed a petition for review with the Arizona COA on May 31, 2011. (Doc. 26 Ex. Z). Petitioner argued that his trial counsel was ineffective for failing to obtain Rose Waltee's work records, and that the trial court abused its discretion in finding that there was no reasonable probability that the records would have changed the outcome of the trial. Petitioner also argued that he had presented newly discovered evidence of third party culpability, and that the trial court abused its discretion in finding that the evidence had no likelihood of affecting the verdict. The COA agreed to review the case and examined the claims raised by Petitioner in his Rule 32 petition and the trial court's denial of Petitioner's request for PCR. The Arizona COA denied relief on August 17, 2011. (Doc. 26 Ex. AA). Petitioner sought review by the Arizona Supreme Court, which denied review on April 24, 2012. (Doc. 26 Exs. CC, DD).

Petitioner subsequently filed a second PCR notice on May 31, 2012, which the trial court dismissed as untimely on July 25, 2012. (Doc. 26 Exs. EE, FF). Petitioner filed

a motion for rehearing on August 20, 2012, which the court denied on October 31, 2012, and a third PCR notice on September 18, 2012, which the court dismissed as moot. (Doc. 26 Exs. GG–II). The court noted that Petitioner had "failed to identify both the specific claim permitted under Rule 32.2(b), and the reason for not raising that specific claim in his First Notice of Post-Conviction Relief." (Doc. 26 Ex. II). Petitioner filed a fourth PCR notice on November 23, 2012, which the court summarily dismissed because Petitioner "failed to state meritorious reasons to substantiate his claim for post-conviction relief, or any valid reason why the claim was not stated in any previous Petition or made in a timely manner." (Doc. 26 Exs. JJ, KK).

### C. Habeas Petition

Petitioner filed his Petition for Writ of Habeas Corpus (PWHC) in this Court on March 11, 2013, asserting five grounds for relief. (Doc. 1). In Ground One, Petitioner alleges his trial counsel was ineffective for failing to obtain employment records for Rose Waltee. In Ground Two, Petitioner alleges his trial counsel was ineffective for failing to discover and present further information about Charles Starcevich's phone call with Rose Waltee, or, alternatively, that the State failed to disclose this evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In Ground Three, Petitioner alleges trial counsel was ineffective for failing to impeach Marianna Velec's testimony. In Ground Four, Petitioner alleges his trial counsel was ineffective for failing to discover and present evidence of third party culpability. Finally, in Ground Five, Petitioner alleges that trial counsel failed to make a for cause challenge to a biased juror and that counsel failed to strike the juror.

Respondents argue that all of Petitioner's due process claims in Grounds One through Five are unexhausted and procedurally defaulted because Petitioner did not present any constitutional due process claims to the state courts. Respondents further argue that the IAC and *Brady* claims in Grounds Two and Five are unexhausted and procedurally defaulted because Petitioner failed to present these claims to the trial court or the Arizona COA, and that the IAC claims in Grounds Three and Four are unexhausted

and procedurally defaulted because Petitioner failed to present them to the COA. Finally, Respondents concede that Petitioner's IAC claim in Ground One was fairly presented to the state courts and is properly exhausted.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the federal court's power to grant a petition for a writ of habeas corpus on behalf of a state prisoner. First, the federal court may only consider petitions alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Sections 2254(b) and (c) provide that the federal courts may not grant habeas corpus relief, with some exceptions, unless the petitioner exhausted state remedies. Additionally, if the petition includes a claim that was adjudicated on the merits in state court proceedings, federal court review is limited by section 2254(d).

### A. Exhaustion

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary opportunity, the prisoner must fairly present her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the highest court requirement is satisfied if the petitioner has presented his federal claim to the Arizona COA, either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F.Supp.2d 925, 931–33 (D. Ariz. 2007).

A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds*, *Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). The petitioner must have "characterized the claims he raised in state

proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) (emphasis in original), *opinion amended and superseded*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

However, "[a] habeas petitioner who [fails to properly exhaust] his federal claims in state court meets the technical requirements for exhaustion" if there are no state remedies still available to the petitioner. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "This is often referred to as 'technical' exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy." *Thomas v. Schriro*, 2009 WL 775417, *4 (D. Ariz. March 23, 2009). "If no state remedies are currently available, a claim is technically exhausted," but, as discussed below, the claim is procedurally defaulted and is only subject to federal habeas review in a narrow set of circumstances. *Garcia v. Ryan*, 2013 WL 4714370, *8 (D. Ariz. Aug. 29, 2013).

### B. Procedural Default

If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally

barred." *Id.* at 735 n. 1; *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims).

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012). Cause requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule . . . [such as] a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and citations omitted). Prejudice requires "showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). The Court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir. 1991). Additionally, a habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (*quoting Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see also Murray*, 477 U.S. at 496; *Cook*, 538 F.3d at 1028.

### C. Adjudication on the Merits and Section 2254(d)

The Ninth Circuit has held that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

If a habeas petition includes a claim that was properly exhausted, has not been procedurally defaulted, and was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision was contrary to federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, ––– U.S. ––––, 132 S.Ct. 38, 43 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770 (2011). This standard is "difficult to meet." *Richter*, 131 S.Ct. at 786. It is also a "highly deferential standard for evaluating state court rulings . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision. *Greene*, 132 S.Ct. at 44. A state court's decision is contrary to federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 14 (2003).

1    A state court decision is an "unreasonable application of" federal law if the court

2 identifies the correct legal rule, but unreasonably applies that rule to the facts of a

3 particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "[E]valuating whether a rule

4 application was unreasonable requires considering the rule's specificity. The more

5 general the rule, the more leeway courts have in reaching outcomes in case-by-case

6 determinations." *Richter*, 131 S.Ct. at 786 (*quoting Yarborough v. Alvarado*, 541 U.S.

7 652, 664 (2004)).

8    **D. Ineffective Assistance of Counsel Claims**

9    The Supreme Court established a two-part test for evaluating ineffective assistance

10 of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that his

11 trial counsel was ineffective under *Strickland*, Petitioner must show: (1) that his trial

12 counsel's performance was deficient; and (2) that trial counsel's deficient performance

13 prejudiced petitioner's defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998)

14 (*citing Strickland*, 466 U.S. at 688, 694).

15    To establish deficient performance, Petitioner must show that "counsel made

16 errors so serious . . . [that] counsel's representation fell below an objective standard of

17 reasonableness" under prevailing professional norms." *Strickland*, 466 U.S. at 687–688.

18 The relevant inquiry is not what defense counsel could have done, but rather whether the

19 decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170,

20 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have

21 rendered adequate assistance and made all significant decisions in the exercise of

22 reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as]

23 explained that '[r]eview of counsel's performance is highly deferential and there is a

24 strong presumption that counsel's conduct fell within the wide range of reasonable

25 representation.'" *Ortiz*, 149 F.3d at 932 (*quoting Hensley v. Crist*, 67 F.3d 181, 184 (9th

26 Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from

27 counsel's perspective at the time of the alleged error and in light of all the circumstances,

28 and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365,

381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance. *Id*.

Even where trial counsel's performance is deficient, Petitioner must also establish prejudice in order to prevail on an ineffective assistance of counsel claim. To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. "The likelihood of a different result must be substantial, not just conceivable." *Richter,* 131 S.Ct. at 792. Further, because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland*, 466 U.S. at 697–700.

Additionally, under the AEDPA, the federal court's review of the state court's decision on an ineffective assistance of counsel claim is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 698–699 (2002). This creates a "doubly deferential" review standard in which a habeas petitioner must show not only that there was a violation of *Strickland*, but also that the state court's resolution of the claim was more than wrong, it was an objectively unreasonable application of *Strickland*. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam); *Bell*, 535 U.S. at 698-99; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential."). The issue under section 2254(d) is not whether counsel's actions were reasonable, but "whether there is any reasonable argument that

counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788.

**III.   ANALYSIS**

    **A. Ground One:**

    In Ground One, Petitioner contends that his trial counsel was ineffective for failing to obtain the employment records of Rose Waltee, and that he was denied due process pursuant to the 5th and 14th amendments to the United States Constitution. Part of Petitioner's defense theory was that N was injured in Yuma, Arizona in March 2006 prior to being in Petitioner's care on March 30, 2006. Petitioner contends that a key date for his defense is what day Rose Waltee had to work and therefore what day she took N to daycare, and thus what date the daycare incident occurred on. Respondent concedes that Petitioner's IAC claim was properly presented to the Arizona COA and is properly exhausted, but argues that "to the extent Petitioner is asserting a separate due process claim as part of Claim I, he did not 'fairly present' any such claim to the state courts." (Doc. 26 at 10).

    When a petitioner fails to fairly present his claims to the state's highest court, but would now be barred by state procedure from returning to state court, an implied procedural bar may arise. *See O'Sullivan* 526 U.S. at 848–49. If a mandatory rule of state procedure would prevent the presentation of the claim, federal review is precluded. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007), *cert. denied sub nom., Smith v. Mills*, 129 S.Ct. 37 (2008) (when petitioner had not properly exhausted his claim, but state court would now find the exhaustion petition barred, the claim is procedurally defaulted); *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims).

    Here, Petitioner raised a claim of ineffective assistance of trial counsel for failure to obtain and present Rose Waltee's work records in both his Rule 32 petition and in his petition for review to the Arizona COA. (Doc. 26 Exs. O, Z). Accordingly, Petitioner fairly presented this claim to the state's highest court and it is properly before this Court

for review. However, Petitioner did not make any specific due process claims pursuant to the 5th or 14th amendments to the United States Constitution regarding the work records in either his direct appeal or in his petition for review to the Arizona COA. While Petitioner cited to the 5th and 14th amendments in his Rule 32 petition and his petition for review to the Arizona COA, "general appeals to broad constitutional principles . . . are insufficient to establish exhaustion." *Hivala*, 195 F.3d at 1106.   Therefore, the Court finds that to the extent Petitioner alleges a separate due process claim in Count One, the claim is unexhausted.

Arizona Rules of Criminal Procedure regarding timeliness[2] and preclusion[3] prevent Petitioner from now exhausting his due process claims in state court. Accordingly, the due process claims in Count One are both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner has failed to show cause for,[4] or prejudice arising from, his procedural default of the due process claims, and the Court can glean none from the record before it. *See Martinez*, 132 S.Ct. at 1316; *Murray*, 477 U.S. at 488. Accordingly,

---

[2] Ariz. R. Crim. P. 32.4(a) states that post-conviction proceedings must begin within 90 days of either the day of judgment and sentence or the date the mandate issues on direct appeal, whichever is later. These deadlines have long since passed in this matter.

[3] Ariz. R. Crim. P. 32.2(a) states that, absent narrowly tailored exceptions not applicable here, successive post-conviction petitions are precluded.

[4] Petitioner states that he can demonstrate cause for the procedural default of his claims by showing ineffective assistance of counsel in violation of the 6th amendment and that government interference made compliance with the state's procedural rules impracticable. (Doc. 27 at 5–6). However, Petitioner fails to further elaborate or offer a specific argument on this point.

Petitioner also states that the Court should dispense with the procedural default requirements because a return to state court would be futile, and because the Court will address all of Petitioner's claims despite the default under a theory of cumulative error. Cumulative error is discussed further in section F below.

Petitioner further states that he relies on *Martinez* to overcome any procedural defaults and/or establish cause and prejudice for the failure to exhaust his claims, but does not further elaborate on this argument other than to allege that Rule 32 counsel did not present Ground Three to the COA against Petitioner's wishes. (Doc. 1–1 at 4, 23).

1    habeas relief on the merits of Petitioner's due process claims in Count One is precluded.

2    However, because Petitioner did properly exhaust the IAC claim in Count One, the Court

3    will consider the merits of this claim.[5]

4         In denying Petitioner's Rule 32 petition on the IAC claim, the Arizona Superior

5    Court found that trial counsel's representation of Petitioner fell below the standard of

6    care because reasonably competent counsel would have obtained the work records to

7    determine whether they bolstered or undermined a defense theory. (Doc. 26 Ex. X).

8    However, the trial court also found that Petitioner was not prejudiced by trial counsel's

9    deficient performance because the employment records would not have assisted

10   Petitioner's defense or changed the outcome of the case in light of the other evidence at

11   trial.  As the court explained:

12             The defense theorizes that the work records would have
               allowed trial counsel to argue that the day care incident
13             during which the child was observed to have vaginal trauma
               occurred prior to the time the child came into the exclusive
14             care of the defendant on March 30, 2006. This sequence,

15

16         [5] Petitioner included a transcript of a telephonic interview with Donna Jones, the
     custodian of records for Rose Waltee's employment records, with his PWHC. (Doc. 1–15
17   at 14 through Doc. 1–16 at 22). Petitioner contends that it is clear from the telephonic
     interview and Jones' testimony at the evidentiary hearing "that there is more to the
18   records than what was contained in the records." (Doc. 27 at 20). However, the
     government contends that the Court may not consider the transcript on habeas review
19   because it was not included as evidence during the Rule 32 evidentiary hearing. Pursuant
     to *Pinholster*, 131 S.Ct. at 1398, this Court's review of § 2254 claims "is limited to the
20   record that was before the state court that adjudicated the claim on the merits."
     Accordingly, this Court will not consider the interview transcript in its review of
21   Petitioner's claims in Ground One

22         Further, even if the Court were to consider the transcript, the transcript does not in
     fact prove that Rose Waltee was at work on March 24, 2006 as Petitioner claims. Jones
23   stated that Rose was hired to work at Sav-On on March 24, 2006 and that "she may have
     actually just come in for orientation or they may have . . . given her the job at that time."
24   (Doc. 1–15 at 19–22; Doc. 1–16 at 3,12). Jones also repeatedly stated that the first day
     Rose worked and was paid was March 27, 2006, and that there was nothing to suggest
25   that Rose worked prior to March 27. (Doc. 1–15 at 22; Doc. 1–16 at 3, 7–8, 12–13). In
     reviewing Rose's work records and considering the testimony at the evidentiary hearing,
26   the trial court stated that it had "no doubt that Ms. Waltee **began** her work at Save-On on
     March 27, 2006," and while the defense argued it was possible she had started earlier,
27   both the trial court and the COA found there was no credible evidence to support that
     assertion. (Doc. 26 Ex. X) (emphasis in original). Regardless of whether Rose Waltee
28   began work on March 27 or was at work on March 24 for orientation, neither the work
     records nor the interview transcript affirmatively prove that N was injured prior to being
     in Petitioner's care on March 30, 2006.

- 14 -

according to the defense, if supported by the work records, would allow the fact finder to have a reasonable doubt based on the implication that the child was sexually traumatized by someone else prior to March 30, 2006.

This theory is predicated on the assumption that the fact finder might have entertained reasonable doubt that the child was taken to day care in Yuma on the first day of Ms. Waltee's new employment at Save-On which was before March 30, 2006. Virtually every civilian witness who testified at trial and at the hearing on the Petition acknowledged that the child was in Tucson no later than March 24, 2006.

The court noted that Rose Waltee testified that Bob Letendre took N to the daycare on a day that Rose had to return to work after being off for a period of time. The court stated that if the records established that Rose began work on March 27, and if Rose was correct that she took N to the daycare when she returned to work after a leave of absence, then the work "records could not support the claim that the child was placed in the Yuma daycare prior to March 30, 2006." In finding no prejudice, the court summarized its findings as follows:

In order for the record to be afforded any defense benefit, a fact finder would have to: overlook the employment start date with the overwhelmingly consistent evidence that the victim was present in Tucson as of 3/24/06; assume that Ms. Waltee was not "returning" to work per her testimony; overlook the probable signs and symptoms of distress and trauma that the child would have manifested; and overlook or discount the testimony of the day care workers who believed that the child was placed with them on one occasion in April during which one of them observed the genital trauma.

For all of the above reasons, the trial court concluded that there was no reasonable probability that the result of Petitioner's trial would have been different had trial counsel obtained the work records.

In his petition for review to the Arizona COA, Petitioner argued that the trial court abused its discretion by ignoring or misdescribing the evidence and relying on conclusions about other evidence. (Doc. 26 Ex. Z). On review, the Arizona COA thoroughly considered each of Petitioner's objections to the trial court's order denying relief, but found no abuse of discretion in the trial court's ruling or any clearly erroneous

factual findings. (Doc. 26 Ex. AA). For example, the COA noted that multiple doctors testified that N's injuries had occurred within hours of her sexual assault examination on March 30, 2006. The court also noted that while Petitioner argued it was possible Rose had started work before March 27, there was no credible evidence to support Petitioner's contention, and further noted that Petitioner's argument was based on speculation that there may have been a data error in the work records, which the record custodian's testimony refuted. The court also pointed to an inconsistency in the testimony of Rose and Charles regarding an alleged phone call that took place between them—while Charles testified that Rose brought N to Tucson because she had to attend orientation for a new job, Rose testified that she took N to daycare because she had to return to work following a leave of absence. The COA also noted that Rose gave contradictory testimony about when she took N to the daycare, stating both that it was March 20 or 21 and that it was after April 3. Though Petitioner challenged the trial court's finding that N went to the daycare on April 24, the COA found that the trial court's determination of a specific date that N was at daycare was not essential to the trial court's ruling that Petitioner failed to show a reasonable probability that he would not have been convicted had Rose's work records been introduced at trial. The COA also stated that the medical testimony seemed to be "at the heart" of the trial court's decision that there was no reasonable probability that the outcome would have been different at trial, and noted that the doctors who examined N on March 30 and 31 opined that her injuries were severe and acute and occurred within hours of her first examination. The COA noted that while Dr. Bowen testified that if a daycare worker observed vaginal redness and irritation between April 20 and 24, it would probably not be related to an injury identified on March 30, Dr. Bowen's testimony was contradicted by Dr. Aldous' testimony that redness and irritation observed 3 weeks after March 30 would be consistent with injuries identified that day. The court noted that Petitioner failed to explain how Rose's work records would have led the jury to resolve this conflict in the testimony differently. For all of these reasons, the COA concluded that the trial court's decision was based on substantial evidence and that

the trial court did not err in concluding that the work records would have done little to bolster Petitioner's defense.

For purposes of federal habeas review, Petitioner bears the burden of showing that the post-conviction relief court, in ruling that trial counsel was not ineffective, applied *Strickland* in an objectively unreasonable manner. In making this determination, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788. Here, Petitioner argues that the trial court's analysis was unreasonable because it "cherry-picked" the evidence to support its conclusion and ignored other credible evidence. (Doc. 27 at 21–22). However, as detailed above, the trial court's finding that Petitioner's claim that his trial counsel was ineffective for failing to obtain Rose Waltee's work records was without merit is supported by the record before this Court, and was not an unreasonable application of *Strickland*. The trial court pointed to a variety of other evidence in finding that the work records would not have changed the outcome at trial, and Petitioner has not shown a substantial likelihood of a different result.

In sum, because Petitioner has not shown that the state court's determination on this claim was based on an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of *Strickland*, the Court will deny relief on Ground One.

**B. Ground Two:**

In Ground Two Petitioner contends that trial counsel was ineffective for failing to discover and present additional information about Charles Starcevich's phone call with Rose Waltee, wherein Rose allegedly told Charles about the Yuma daycare incident. Petitioner also alleges that he was denied due process pursuant to the 5th and 14th amendments to the United States Constitution. Petitioner contends that counsel should have presented evidence about when the call took place, which would therefore show when the daycare incident took place, and thereby support Petitioner's argument that N

was injured in March 2006 prior to being in his care. Petitioner alternatively argues that the state committed a *Brady* violation by failing to disclose the evidence about the phone call to his trial counsel. Petitioner states that it is unclear whether this error falls on the state or on his trial counsel, and thus requests counsel and an evidentiary hearing to determine which party is at fault. Respondent contends that Petitioner failed to properly exhaust this claim in state court because he failed to raise it during PCR proceedings or present it to the COA, thus making Ground Two procedurally defaulted and barred from this Court's review.

When a petitioner fails to fairly present his claims to the state's highest court, but would now be barred by state procedure from returning to state court, an implied procedural bar may arise. *See O'Sullivan* 526 U.S. at 848-49. If a mandatory rule of state procedure would prevent the presentation of the claim, federal review is precluded. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007), *cert. denied sub nom., Smith v. Mills*, 129 S.Ct. 37 (2008) (when petitioner had not properly exhausted his claim, but state court would now find the exhaustion petition barred, the claim is procedurally defaulted); *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims).

Here, Petitioner did not challenge trial counsel's failure to discover or present evidence about the alleged phone call between Charles Starcevich and Rose Waltee in either his direct appeal to the Arizona COA or in his Rule 32 Petition for PCR, nor did Petitioner raise this as a possible *Brady* violation or a due process claim. While Petitioner did alleged claims of ineffective assistance of trial counsel based on trial counsel's alleged failure to discover and present Rose Waltee's work records and failure to impeach Marianna Velec's testimony, "Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts [presented to the state courts], does not exhaust other claims of ineffective assistance of counsel based on different facts" that were not presented to the state courts. *Date v. Schriro,* 619 F.Supp.2d 736, 788 (D. Ariz.

2008); *see also Moormann v. Schriro*, 426 F.3d 1044, 1056-57 (9th Cir. 2005), *cert. denied*, 548 U.S. 927 (2006) (new allegations of ineffective assistance of counsel not previously raised before the state court cannot be addressed on habeas review). Therefore, because Petitioner failed to fairly present the claims in Ground Two to the state courts, Petitioner failed to properly exhaust this claim.

Arizona Rules of Criminal Procedure regarding timeliness[6] and preclusion[7] prevent Petitioner from now exhausting the claims in Ground Two in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus is not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner has failed to show cause for, or prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it. *See Martinez*, 132 S.Ct. at 1316. There was no objective factor external to the defense which impeded Petitioner's efforts to comply with the State's procedural rule; Petitioner simply failed to raise the claim in his state court proceedings. *See Murray*, 477 U.S. at 488; *see also Engle*, 456 U.S. at 134 n. 43 (the court need not examine the existence of prejudice if the petitioner fails to establish cause).

Further, while Petitioner contends that a *Brady* violation is a per se excuse for the procedural default, Petitioner's argument on this point fails. "To prove a *Brady* violation, [Petitioner] must show (1) that the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) that it was suppressed by the state, either willfully or inadvertently; and (3) that it was material." *Henry v. Ryan*, 720 F.3d 1073, 1080 (9th Cir. 2013). For procedural default purposes, "cause and prejudice parallel two of the three components of the alleged *Brady* violation itself." *Woods v. Sinclair*, 764 F.3d 1109,

---

[6] Ariz. R. Crim. P. 32.4(a) states that post-conviction proceedings must begin within 90 days of either the day of judgment and sentence or the date the mandate issues on direct appeal, whichever is later. These deadlines have long since passed in this matter.

[7] Ariz. R. Crim. P. 32.2(a) states that, absent narrowly tailored exceptions not applicable here, successive post-conviction petitions are precluded.

1130 (9th Cir. 2014) *cert. denied sub nom. Holbrook v. Woods*, 135 S. Ct. 2311 (2015) (internal quotations and citations omitted). "A petitioner may establish cause by showing that the prosecution's suppression of evidence was the reason for the petitioner's failure to develop the factual basis of the claim in state court." *Id*. "Prejudice is established by showing that the suppressed evidence is material for *Brady* purposes." *Id*. "To establish materiality, [Petitioner] must show that the state's nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Henry*, 720 F.3d at 1080 (internal quotations and citation omitted).

Here, it is unclear what exactly Petitioner is arguing that the state failed to disclose. Petitioner himself states in the PWHC that Charles Starcevich testified at trial that Rose Waltee reported the Yuma daycare incident to him over the phone. (Doc. 1–1 at 2). While Petitioner faults both the prosecutor and his trial counsel for failing to elicit further information from Charles about the phone call during direct and cross examination, Petitioner cannot show cause for his failure to develop the factual basis of his *Brady* claim in state court because he has been aware of the phone call at least since Charles Starcevich testified about it at trial. *See Henry v. Ryan*, 720 F.3d 1073, 1083 (9th Cir. 2013) (petitioner could not rely on *Banks v. Dretke*, 540 U.S. 668 (2004*)* or *Strickler v. Greene*, 527 U.S. 263 (1999) to show cause for failure to present *Brady* claim to state courts where he suspected and had evidentiary support for his claim for more than a decade before commencing habeas proceedings; court noted that the petitioner's "proposed rule, under which suppression always establishes cause, would permit a defendant who knows of wrongdoing by the state to wait to bring such a claim until he is in front of the judicial forum that he feels would be most sympathetic to his claim."). Further, Petitioner has failed to meet his burden to show prejudice because he has not shown that the state's alleged failure to disclose information about the phone call was material to the guilty verdict.

Accordingly, habeas relief on the merits of this claim is precluded, and the Court will deny relief on Ground Two.

**C. Ground Three:**

In Ground Three Petitioner argues that trial counsel was ineffective for failing to impeach Marianna Velec's testimony about when the daycare incident occurred, and that he was denied due process pursuant to the 5th and 14th amendments to the United States Constitution. Petitioner states that Velec testified that she remembered the incident took place on a Friday, but that April 20, 2006 was actually a Thursday and counsel failed to point out this discrepancy. Petitioner contends that, taken cumulatively with Grounds One and Two, this information would have completed his defense by proving that the Yuma daycare incident occurred in March, not April, 2006, and that N was injured prior to being in Petitioner's care on Marcy 30, 2006. Respondent contends that although Petitioner presented this claim to the trial court, he failed to present the claim to the COA, and thus Ground Three is unexhausted.

When a petitioner fails to fairly present his claims to the state's highest court, but would now be barred by state procedure from returning to state court, an implied procedural bar may arise. *See O'Sullivan* 526 U.S. at 848–49. If a mandatory rule of state procedure would prevent the presentation of the claim, federal review is precluded. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007), *cert. denied sub nom., Smith v. Mills*, 129 S.Ct. 37 (2008) (when petitioner had not properly exhausted his claim, but state court would now find the exhaustion petition barred, the claim is procedurally defaulted); *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims).

Here, Petitioner failed to meet his duty to fairly present his claims in Ground Three to the state's highest court because Petitioner did not complain about trial counsel's alleged failure to impeach Velec's testimony in either his direct appeal to the Arizona COA or in his petition for review to the Arizona COA. In his Rule 32 Petition to the trial court, Petitioner argued that his trial counsel was ineffective for failing to reveal the inconsistency in Velec's testimony that April 20, 2006 was not a Friday. (Doc. 26 Ex.

O). The trial court found that Petitioner's trial counsel admitted he should have brought out this inconsistency; however, the court concluded that there was no reasonable probability that the results of the trial would have been different because the inconsistency in Velec's testimony was inconsequential in light of the other evidence presented at trial. (Doc. 26 Ex. X). When Petitioner filed his petition for review with the Arizona COA, Petitioner raised two issues for review: that trial counsel was ineffective for failing to present Rose Waltee's work records, and that Petitioner had presented newly discovered third party culpability evidence. (Doc. 26 Ex. Z). Thus, Petitioner abandoned his claim that trial counsel was ineffective for failing to impeach Velec's testimony when he filed his petition for review with the COA. Accordingly, Petitioner failed to exhaust this claim.

Arizona Rules of Criminal Procedure regarding timeliness[8] and preclusion[9] prevent Petitioner from now exhausting this claim in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus is not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner has failed to show cause for, or prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it. *See Martinez*, 132 S.Ct. at 1316. There was no objective factor external to the defense which impeded Petitioner's efforts to comply with the State's procedural rule; rather, Petitioner chose to abandon this claim when he filed his petition for review with the Arizona COA. *See Murray*, 477 U.S. at 488; *see also Engle*, 456 U.S. at 134 n. 43 (the court need not examine the existence of prejudice if the petitioner fails to establish cause).

While Petitioner appears to rely on *Martinez* to excuse his procedural default,

---

[8] Ariz. R. Crim. P. 32.4(a) states that post-conviction proceedings must begin within 90 days of either the day of judgment and sentence or the date the mandate issues on direct appeal, whichever is later. These deadlines have long since passed in this matter.

[9] Ariz. R. Crim. P. 32.2(a) states that, absent narrowly tailored exceptions not applicable here, successive post-conviction petitions are precluded.

stating Rule 32 counsel allegedly failed to present Ground Three to the COA against Petitioner's wishes, *Martinez* is inapplicable here. (Doc. 1–1 at 4). *Martinez* held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315. In the present case, Rule 32 counsel raised the claim in Ground Three in the PCR petition—the initial review collateral proceeding. *Martinez* does not apply to counsel's alleged failure to subsequently raise the claim in the petition for review to the COA. Further, as Respondent notes, even if *Martinez* did apply, Petitioner could not show cause to excuse the procedural default of this claim because Rule 32 counsel could have evaluated the merits of the claim and made a tactical decision not to pursue it. The Court agrees. *See Gustave v. U.S.*, 627 F.2d 901, 904 (1980) ("Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation."); *Strickland*, 466 U.S. at 689, 690 (acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel, and "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Further, given the trial court's finding that any error in failing to impeach Velec's testimony was inconsequential in light of the other evidence presented at trial, the Court finds Petitioner cannot show prejudice from Rule 32 counsel's decision not to pursue this claim further in the petition for review.

Accordingly, the Court finds that the claims in Ground Three are technically exhausted and procedurally defaulted, and Petitioner has failed to show cause and prejudice for the default. Habeas relief on the merits of this claim is precluded, and the Court denies relief on Ground Three.

### D. Ground Four:

In Ground Four Petitioner argues that trial counsel failed to discover and present evidence of third party culpability, specifically that N's step-grandfather, Bob Letendre, was abusing her. Petitioner also alleges that he was denied due process pursuant to the 5th and 14th amendments to the United States Constitution. Petitioner contends that Rose

Waltee provided sworn statements about several incidents of sexually abnormal behavior that she witnessed between Bob Letendre and N, and that this evidence goes to the question of identity of the perpetrator because it shows that someone else was responsible for N's injuries. Respondent contends that this claim was not fairly presented to the COA and thus is unexhausted.

When a petitioner fails to fairly present his claims to the state's highest court, but would now be barred by state procedure from returning to state court, an implied procedural bar may arise. *See O'Sullivan* 526 U.S. at 848–49. If a mandatory rule of state procedure would prevent the presentation of the claim, federal review is precluded. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007), *cert. denied sub nom., Smith v. Mills*, 129 S.Ct. 37 (2008) (when petitioner had not properly exhausted his claim, but state court would now find the exhaustion petition barred, the claim is procedurally defaulted); *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims).

Here, Petitioner failed to meet his duty to fairly present his claims in Ground Four to the state's highest court because Petitioner did not complain about trial counsel's alleged failure to discover third party culpability evidence in either his direct appeal to the Arizona COA or in his petition for review to the Arizona COA. In his supplemental Rule 32 petition, Petitioner alleged that there was newly discovered evidence of third party culpability, and alternatively argued that his trial counsel was ineffective for failing to discover and present the evidence. The trial court noted that Petitioner had abandoned or conceded the IAC claim during closing arguments at the evidentiary hearing, but found that even if the IAC claim was not abandoned, trial counsel was not ineffective for failing to discover the evidence because trial counsel acted diligently to uncover evidence of third party culpability and met repeatedly with Rose Waltee. (Doc. 26 Ex. X). The trial court also noted that Rose had ample opportunity to disclose this information, and found that her testimony was incredible and unbelievable because it tended to shift depending

on who she was in contact with (for example, whether she was with her first husband or second husband).[10] The court further noted that Rose admitted that she felt "considerable pressure regarding her testimony from those that she was having contact with throughout the proceedings," and that she was unable "to recount even simple events in a straight forward and consistent manner." *Id.* The trial court therefore concluded that Rose Waltee's testimony regarding Bob Letendre's sexual behavior with N had no likelihood of affecting the jury verdict.

When Petitioner filed his petition for review with the Arizona COA, Petitioner argued that he had presented newly discovered third party culpability evidence, and that the trial court had abused its discretion in finding that the evidence had no likelihood of affecting the verdict. (Doc. 26 Ex. Z). However, Petitioner did not raise the issue of whether his trial counsel had been ineffective for failing to discover and present the evidence. In light of the trial court's finding that Petitioner abandoned or conceded the IAC claim, and Petitioner's failure to raise the IAC claim in his petition for review, the Court finds that Petitioner failed to fairly present his claims in Ground Four to the state courts.

Arizona Rules of Criminal Procedure regarding timeliness[11] and preclusion[12] prevent Petitioner from now exhausting this claim in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus is not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner has failed to show cause for, or

---

[10] This Court finds it incredible that Rose Waltee cannot remember whether the one occasion that she took her granddaughter to daycare occurred prior to or following March 30, 2006, and this gives further support to the trial court's finding that Ms. Waltee's testimony was unreliable and inconsistent.

[11] Ariz. R. Crim. P. 32.4(a) states that post-conviction proceedings must begin within 90 days of either the day of judgment and sentence or the date the mandate issues on direct appeal, whichever is later. These deadlines have long since passed in this matter.

[12] Ariz. R. Crim. P. 32.2(a) states that, absent narrowly tailored exceptions not applicable here, successive post-conviction petitions are precluded.

prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it. *See Martinez*, 132 S.Ct. at 1316. There was no objective factor external to the defense which impeded Petitioner's efforts to comply with the State's procedural rule; rather, when Petitioner filed his petition for review with the Arizona COA he chose not to pursue his claim that trial counsel was ineffective for failing to discover the third party culpability evidence. *See Murray*, 477 U.S. at 488; *see also Engle*, 456 U.S. at 134 n. 43 (the court need not examine the existence of prejudice if the petitioner fails to establish cause). Accordingly, habeas relief on the merits of this claim is precluded because Petitioner failed to fairly present the claim to the Arizona COA, and the Court denies relief on Ground Four.

### E. Ground Five:

In Ground Five Petitioner alleges ineffective assistance of trial counsel and violation of his due process rights pursuant to the 5th and 14th amendments to the United States Constitution based on trial counsel's alleged failure to make a for cause challenge to a biased juror during voir dire. Petitioner alternatively argues that counsel should have peremptorily struck the juror. Petitioner contends that he was prejudiced by counsel's error because the juror voted to convict, and that he was a denied his right to a fair and impartial jury. Respondent contends that Petitioner failed to properly exhaust this claim in state court, thus making it procedurally defaulted and barred from this Court's review.

When a petitioner fails to fairly present his claims to the state's highest court, but would now be barred by state procedure from returning to state court, an implied procedural bar may arise. *See O'Sullivan* 526 U.S. at 848–49. If a mandatory rule of state procedure would prevent the presentation of the claim, federal review is precluded. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007), *cert. denied sub nom., Smith v. Mills*, 129 S.Ct. 37 (2008) (when petitioner had not properly exhausted his claim, but state court would now find the exhaustion petition barred, the claim is procedurally defaulted); *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural

default of those claims).

Here, Petitioner failed to meet his duty to fairly present his claims in Ground Five to the state's highest court because Petitioner did not complain about trial counsel's failure to challenge the allegedly biased juror in either his direct appeal or his Rule 32 petition, nor did Petitioner present any such claims in his petition for review to the Arizona COA. Petitioner likewise failed to present any due process claims related to voir dire. Accordingly, the Court finds the claims in Ground Five are unexhausted because Petitioner failed to fairly present them to the state courts.

Arizona Rules of Criminal Procedure regarding timeliness[13] and preclusion[14] prevent Petitioner from now exhausting this claim in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus is not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner has failed to show cause for, or prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it. *See Martinez*, 132 S.Ct. at 1316. There was no objective factor external to the defense which impeded Petitioner's efforts to comply with the State's procedural rule; rather, Petitioner simply failed to raise this claim at all. *See Murray*, 477 U.S. at 488; *see also Engle*, 456 U.S. at 134 n. 43 (the court need not examine the existence of prejudice if the petitioner fails to establish cause). Accordingly, habeas relief on the merits of this claim is precluded, and the Court denies relief on Ground Five.

### F.  Cumulative Error

Petitioner contends that "in assessing prejudice this court must consider all of the grounds which the court finds to have been established together," and that "if no one ground is found to require relief, they must be considered in the aggregate." (Doc. 1–1 at

---

[13] Ariz. R. Crim. P. 32.4(a) states that post-conviction proceedings must begin within 90 days of either the day of judgment and sentence or the date the mandate issues on direct appeal, whichever is later. These deadlines have long since passed in this matter.

[14] Ariz. R. Crim. P. 32.2(a) states that, absent narrowly tailored exceptions not applicable here, successive post-conviction petitions are precluded.

22–23). Respondent contends that cumulative error claims are not cognizant on habeas review because even though the Ninth Circuit has recognized the right to bring such claims, "that does not matter because 'clearly established' federal law under AEDPA only refers to holdings of the Supreme Court." (Doc. 26 at 27) (*citing Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012)).

The Ninth Circuit has found that "[m]ultiple trial errors may violate due process where the cumulative effect of the errors renders the resulting criminal trial fundamentally unfair." *Taylor v. Beard*, 616 F. App'x 344, 345 (9th Cir. 2015) (*citing Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (*citing Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)). Further, "[t]he cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Parle,* 505 F.3d at 927 (*citing Chambers*, 410 U.S. at 290 n. 3). However, absent a specific constitutional violation, habeas relief based on a petitioner's assertion of cumulative error is barred unless the petitioner's trial was so infected with unfairness "as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Here, Petitioner is not entitled to relief based on cumulative error because, as explained throughout this order, there were no constitutional errors affecting his due process rights. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). ("Because there is no single constitutional error in this case, there is nothing to accumulate to the level of a constitutional violation."); *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."); *cf. Parle*, 505 F.3d at 928 ("If the evidence of guilt is otherwise overwhelming, the errors are considered 'harmless' and the conviction will generally be affirmed."). The cumulative effect of any errors that occurred at Petitioner's trial, if any, did not render the trial fundamentally unfair, and reviewing all of Petitioner's claims together, the Court finds no cumulative error requiring reversal.

. . .

### G. Actual Innocence

In his PWHC, Petitioner makes the conclusory statement that he is innocent and that he relies on *Martinez v. Ryan* to overcome the procedural default of any of his claims. (Doc. 1–1 at 23). In his Reply, Petitioner further states that Grounds One through Four of his petition "involve exculpatory evidence not presented at his trial(s) that implicate a third-party to be responsible for the offense which the State convicted [Petitioner] of." (Doc. 27 at 13).

The mere existence of newly discovered evidence relevant to guilt is not grounds for federal habeas relief. *Gordon v. Duran*, 895 F.2d 610, 614 (9th Cir. 1990). The Court can grant habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[n]ewly discovered evidence is a ground for habeas relief only when it bears on the constitutionality of an appellant's conviction and would probably produce an acquittal." *Spivey v. Rocha*, 194 F.3d 971, 979 (9th Cir. 1999) (*citing Swan v. Peterson*, 6 F.3d 1373, 1384 (9th Cir. 1993)). "Evidence which suggests only that some other individual might have committed the crime rather than showing that the defendant did not commit the crime is insufficient to meet the 'probability of acquittal' standard." *Jeffries v. Blodgett*, 5 F.3d 1180, 1188 (9th Cir. 1993).

Further, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("[N]ewly discovered evidence . . . alleged in a habeas application . . . must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."); *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (rejecting habeas claim based upon newly discovered evidence because the petitioner "neither allege[d] an independent constitutional violation nor present[ed] affirmative proof of his

innocence"). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution— not to correct errors of fact." *Herrera*, 506 U.S. at 400 (*citing Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923) (Holmes, J.) ("[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved")).

Here, Petitioner is not entitled to federal habeas relief based solely on his claim of actual innocence of the criminal acts underlying his conviction. *See Coley v. Gonzalez*, 55 F.3d 1385, 1387 (9th Cir. 1995). Even if Petitioner's claim of innocence was a cognizable claim in this habeas proceeding, Petitioner has not offered any evidence that affirmatively proves his innocence. *See Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1997), *cert. denied*, 523 U.S. 1133 (1998) (court rejected freestanding actual innocence claim, noting that petitioner had "presented no evidence, for example, demonstrating he was elsewhere at the time of the murder, nor [was] there any new and reliable physical evidence, such as DNA, that would preclude the possibility of guilt."); *Jones v. Taylor*, 763 F.3d 1242, 1251 (9th Cir. 2014) ("The most that can be said of the new testimony is that it undercuts the evidence presented at trial. Evidence that merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of actual innocence."). Thus, to the extent that Petitioner is making a free-standing claim of actual innocence based on newly discovered evidence, the claim is denied.

Further, to the extent that Petitioner relies on *Martinez* to excuse the procedural default of his claims, Petitioner's argument fails. A federal court may review the merits of a procedurally defaulted habeas claim if the petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup*, 513 U.S. at 327. A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id*. This exception is applied in rare instances, and a "tenable actual-innocence

gateway" claim will not be found unless the petitioner "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S.Ct. at 1928 (*citing Schlup*, 513 U.S. at 329). Actual innocence thus serves as a "gateway" for a petitioner to have procedurally or time-barred constitutional claims reviewed. *Id.*; *Smith v. Baldwin*, 510 F.3d 1127, 1139–49 (9th Cir. 2007) (en banc) (A claim of innocence under *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").

To make such a showing, a petitioner must prove with new reliable evidence that "it is more likely than not that no juror, acting reasonably, would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. A showing that a reasonable doubt exists in the light of the new evidence is not sufficient; rather, the petitioner must show that "it is more likely than not that no reasonable juror would have found [petitioner] guilty beyond a reasonable doubt." *Id.* at 327. Typically, the "precedents holding that a habeas petitioner satisfied [the *Schlup* standard]" have "involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1095–96 (9th Cir. 2013).

In the present case, while Petitioner challenges the constitutional adequacy of the procedures that led to his conviction and the fairness of that conviction, he does not point to evidence of actual, factual innocence.[15] Further, the evidence Petitioner relies on, is not in fact new evidence, as it was raised in the Rule 32 proceedings.[16] Therefore, Petitioner has not shown that there is new evidence of actual innocence that justifies review of his time-barred claims.

---

[15] The allegations in Rose Waltee's affidavit do not establish that Petitioner is actually innocent of the charges, nor do they establish that another party is actually responsible for N's injuries. Rose does not allege that Robert Letendre confessed to the crime, nor does she allege that she witnessed him molesting N. Moreover, all of the incidents that Rose does allege that she witnessed between Robert Letendre and that she considered weird or odd occurred many months and up to a year before the incident at issue in this case. (Doc. 26 Ex. Q Attach. A).

[16] The Arizona COA considered the evidence for purposes of Ariz. R. Crim. P. 32.1(e), but found that it would probably not have changed the verdict at trial. (Doc. 26 Ex. AA).

**IV.   CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 is denied and that this action is dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that no certificate of appealability shall be issued and that Petitioner is not entitled to appeal in forma pauperis because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable. Further, to the extent Petitioner's claims are rejected on the merits, reasonable jurists would not find the Court's assessment of the constitutional claims to be debatable or wrong.

Dated this 31st day of March, 2016.

Eric J. Markovich
United States Magistrate Judge